UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-484-H

IVAN WARE & SON, INC.
d/b/a WARE, INC.                                                            PLAINTIFF

V.

DELTA ALIRAQ, INC.                                                          DEFENDANT

**MEMORANDUM OPINION**

Ivan Ware & Son, Inc. ("Ware") filed suit against Delta Aliraq, Inc. ("Delta"), alleging fraud and unjust enrichment during the preparation of a bid for a boiler system installation project ("the Project") at the South Oil Refinery in Basrah, Iraq ("South Oil"). The Iraq Ministry of Oil ultimately awarded the Project to Delta. Ware claims that Delta fraudulently induced Ware to develop plans and designs as part of the bid proposal, and that without Ware's services, Delta would not have been awarded the contract. Delta has moved to dismiss on the grounds that the Court lacks personal jurisdiction. Personal jurisdiction cases require a heavily fact-based analysis. For the reasons that follow, the Court finds that it can exercise personal jurisdiction over Delta.

I.

Delta is a Delaware corporation with its principal place of business in Tustin, California. It provides engineering and technical services to the oil services industry. Delta is not qualified to do business in Kentucky, has no employees or officers in Kentucky, has no office or facility in Kentucky, conducts no marketing in Kentucky and maintains no property in Kentucky.

Sometime in 2007, Delta was preparing a bid for a turn-key boiler system to be installed

at South Oil. Around May of 2007, Delta solicited Ware, a Kentucky corporation, to provide a technical proposal for incorporation into Delta's own proposal and bid for the Project. The solicitation took place by way of a phone call between Delta's President, Kais Almarzouk ("Almarzouk"), and Mr. Keown, a Ware employee located in Kentucky. Almarzouk followed up the phone call with an email to Mr. Keown, and several emails were exchange between Almarzouk and Ware employees in May and June of 2007 as the two entities worked on the bid proposal.

In June, 2007, after many communications between Almarzouk and Kentucky-based Ware employees, Ware and Delta submitted a joint Erection and Installation Proposal which set forth, in great detail, the scope of their respective duties and obligations with respect to the Project. At Delta's request, Ware obtained and executed a bid bond of $1.5 million with The Fidelity and Deposit Company of Maryland on or about September 10, 2007. Almarzouk and, Steven Taylor ("Taylor"), the Director of Sales for Ware, were in regular communication via email exchanges around this time. Taylor works out of Kentucky. Around November 10, 2007, Delta asked Ware to provide $100,000 for a Letter of Credit and Performance Bond. On or about December 16, 2007, Delta told Ware that it would be requesting a final bid from Ware and told Ware of a second boiler installation project identical to the Project.

Between December 2007 and February 2008, Ware continued to work with Delta on Delta's bid, which required the exchange of multiple emails between Delta and Ware employees in Kentucky. After several months of work, Ware copyrighted a Technical Proposal describing its offer and the various equipment systems it would prepare. Ware sent Delta a copy of the Technical Proposal, but only after being reassured by Delta that it would be awarded a contract

to work on the Project. After Ware sent Delta a revised technical proposal, Delta submitted a bid to the Iraq Ministry of Oil for the Project around April 3, 2008. In the bid letter, Delta stated that its team for the Project included Ware, which had been working on the proposal for over a year. Almarzouk emailed Ware on May 15, 2008, informing them that the Ministry of Oil had awarded Delta the Project. Subsequently, Delta and Ware exchanged a series of emails through September 2008 in an effort to formalize a contractual relationship. Also during this time, Delta solicited a proposal from Ware for a second project for the South Refinery Company in Basrah, Iraq.

On or about November 30, 2008, Ware and Delta executed a Letter of Intent, in which Delta expressed its intention to "purchase a 'turn key' boiler room from Ware, Inc." From November 2008 through February 2009, Ware and Delta continued to work together, and exchanged several emails during this time. In January of 2009, Delta's new owner, Davis Weisman ("Weisman"), informed Ware that Delta had requested and was entertaining proposals for the Project from other companies. Delta ultimately awarded the contract to another company, Nebraska Boiler. On September 11, 2009, Ware demanded that Delta reimburse Ware for the $1,371,5000 that it expended at Delta's request in furtherance of the Project.

After Delta refused the demand, this lawsuit followed.

II.

The plaintiff has the burden of establishing personal jurisdiction over another party. *Papa John's Int'l., Inc. v. Entm't Mktg. Int'l, Ltd.*, 381 F. Supp. 2d 638, 641 (W.D. Ky. 2005) (citing *Welsh v. Gibbs*, 631 F.2d 436 (6th Cir. 1980)). When no evidentiary hearing has taken place, the court determines jurisdiction based on the pleadings and affidavits, taken in the light most

3

favorable to the plaintiff, and without considering the defendant's version of any disputed facts. *Id.* (citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir. 1998)). Furthermore, plaintiff need only make out a prima facie case. *Id.* "The plaintiff satisfies its burden by 'establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction.'" *Mammoth Res. Partners, Inc. v. Phoenix Drilling, Inc.*, No. 1:10CV-36-M, 2010 U.S. Dist. LEXIS 64795, *6 (W.D. Ky. June 29, 2010) (quoting *Neogen Corp. v. Neo Geo Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)).

III.

"In determining whether personal jurisdiction exists over a nonresident defendant in a diversity case, a district court applies the law of the state in which it sits subject to due process limitations." *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980). "Kentucky's long-arm statute, *KRS 454.210*, has been understood to reach the limit permitted by the Constitution." *Mammoth Res.*, 2010 U.S. Dist. LEXIS 64795, *4 (citing *Wilson v. Case*, 85 S.W.3d 589, 592 (Ky. 2002)). "Thus, the single question is whether the jurisdiction sought is within the requirements of due process." *Id.* "To subject a nonresident defendant to personal jurisdiction without violating due process, the defendant must have 'minimum contacts' with the forum 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Papa John's*, 381 F. Supp. 2d at 641 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

To determine whether the defendant has the requisite minimum contacts, this Court applies the Sixth Circuit's familiar three-part test, which states:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial

4

> enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968). The Court must determine whether Ware has established each element of this three-part test. In doing so, however, the Court acknowledges that the test is not a mechanical one, and that "a court applying it must 'consider the jurisdictional facts of each case individually, to make judgments as to the substantiality of contacts with the forum state and the fairness and justice of subjecting a specific defendant to the in personam jurisdiction of the forum state.'" *Gateway Press*, *Inc. v. Leejay, Inc.,* 993 F.Supp. 578, 580-81 (W.D. Ky. 1997) (quoting *In- Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 225-26 (6th Cir. 1972)).

A.

The first step in the analysis is to determine whether Delta has purposefully availed itself of the privilege of acting in or causing a consequence in Kentucky.

This Court has stated that "[t]he requirement of purposeful availment 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'" *Medical Distrib. v. Quest Healthcare, Inc.,* 2002 U.S. Dist. LEXIS 1692, No. 3:00CV-154-H, *9 (W.D. Ky. Feb. 1, 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Indeed, 'the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *Burking King*, 471 U.S. at 474). Stressing the importance of intentional and deliberate action on the part of the defendant, in *Lak, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir. 1989), the Sixth Circuit held, "[e]ven in a case where the cause of action arose in the plaintiff's home state, that state may not exercise in personam jurisdiction if the defendant has not purposefully

entered into a connection with it 'such that he should reasonably anticipate being haled into court there.'" *Deer Creek*, 885 F.2d at 1300 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Here, there was nothing random, fortuitous or attenuated about Delta's contacts with Kentucky. Delta solicited the services of a Kentucky corporation, and continued to work with that corporation for more than two years, exchanging several emails, phone calls and documents along the way. While it is true that no one from Delta ever actually set foot in Kentucky, "in determining whether the purposeful availment test is satisfied, courts must look beyond formalistic measures such as physical presence in the forum and instead evaluate the nature of the contacts and the degree to which they represent a purposeful availment of the forum's protections and benefits. The two cornerstones of this analysis are foreseeability and voluntariness." *Cummings v. Pitman*, 239 S.W.3d 77, 86 (Ky. 2007). Delta voluntarily established a working relationship Ware. The contacts themselves are significant in both quantity and quality, and as such, Delta could have foreseen that its actions could land it in a Kentucky court.

Two of this Court's prior opinions concerning personal jurisdiction are worthy of note and comparison. In *Hillerich & Bradsby Co. v. Hall*, 147 F.Supp.2d 672 (W.D. Ky. 2001), this Court determined that the defendant, a Georgia resident who contracted with a Kentucky corporation to promote the corporation's products, had not purposefully availed himself of the benefits or protections of Kentucky. The Court said that it was "particularly persuaded by (1) [Defendant's] limited contacts with Kentucky generally, (2) the passive nature of those limited contacts with Kentucky, and (3) the absence of any obligations performed by [Defendant] in

6

Kentucky." *Hillerich & Bradsby*, 147 F.Supp.2d at 677. The inverse is true here. Delta's contacts were significant and frequent over a two-year period. Delta played an active role during its two-year working relationship with Ware, often soliciting services and sometimes funds from Ware. Finally, the obligations at the root of this cause of action were performed in Kentucky.

In *Hillerich & Bradsby*, this Court pointed to *Gateway Press, Inc. v. Leejay, Inc.*, 993 F.Supp. 578 (W.D. Ky. 1997), as a more appropriate case for a finding of jurisdiction. In *Gateway Press*, the Court had found personal jurisdiction over an out-of-state defendant that sought the services of a Kentucky corporation, and it noted that "the course of dealing between the parties more closely resembled an 'ongoing relationship' than an 'isolated transaction.'" *Gateway Press*, 993 F.Supp. at 581 (quoting *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 151 (6th Cir. 1997)). The Court went on to say, "Both the size of the contract and the place of performance are highly relevant factors in making the determination of whether a defendant's actions directed toward the forum were sufficiently purposeful." *Id.* (citing *In-Flight Devices*, 466 F.2d at 228). The $170,000 contract at issue and the fact that all of the work was done in Kentucky, combined with the ongoing relationship was enough to establish jurisdiction.

The circumstances are similar here. Delta's relationship with Ware was ongoing, it required that a great deal of labor take place in Kentucky, and, according to Ware, the value of that labor was $1,371,5000. Consistent with the analysis in *Hillerich & Bradsby* and *Gateway Press*, the Court finds that Delta purposefully availed itself of the privilege of acting in or causing a consequence in Kentucky.

B.

The Court must now determine whether the cause of action arises from Delta's contacts with Kentucky.

"The necessary degree of relatedness for the plaintiffs claims to 'arise from' the defendant's contacts has never been precisely determined." *Auto Channel, Inc. v. Speedvision Network, LLC*, 995 F.Supp. 761, 766 (W.D. Ky. 1997). "However, the Sixth Circuit requires that the cause of action have at least a 'substantial connection' to the defendant's in-state activities." *Id.* (citing *Southern Machine*, 401 F.2d at 384, n.27; *Third Nat. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989)). Delta's contacts have, at the very least, a substantial connection to Ware's underlying claims for fraud in the inducement and unjust enrichment. Ware claims that Delta's communications, specifically their misleading nature, caused Ware to perform services related to the Project and ultimately led to Delta being unjustly enriched. Delta's contacts form the basis of Ware's claims, and as such, Ware's claim arise from Delta's contacts with Kentucky. The circumstances of this case easily satisfy the second part of the *Southern Machine* test.

C.

The final step in the analysis is to determine whether Delta's actions or the consequences caused by those actions have a substantial enough connection with Kentucky to make the Court's exercise of jurisdiction reasonable.

In the Sixth Circuit, when the first two prongs of the *Southern Machine* test have been met, "an inference arises that this third factor [of reasonableness] is also present." *Medical Distrib.,* 2002 U.S. Dist. LEXIS 1692, *13 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d

1257, 1268 (6th Cir. 1996)). Still, in deciding whether the inference may be overcome in a particular set of circumstances, "[a] court must consider several factors in this context, including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.* (quoting *CompuServe*, 89 F.3d at 1268).

Delta has never claimed that litigating this dispute in a Kentucky court would impose any sort of unreasonable burden upon it. Nor could it reasonably make such an argument. Moreover, Kentucky has an interest in litigating matters where Kentucky plaintiffs allege to have lost millions as a result of an out-of-state defendant's ongoing solicitation of the Kentucky plaintiff's services. Considering the significance of the alleged loss, Ware has a significant interest in obtaining relief. The Court is not aware of any other state that would have a more significant interest in the litigation. Furthermore, "In *Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2001), the court found that jurisdiction was reasonable when the defendant had established 'a relationship with plaintiffs from which he hoped to profit financially.'" *United Radio, Inc. v. Wagner*, 448 F.Supp.2d 839, 843 (E.D. Ky. 2006) (quoting *Janssen*, 270 F.3d at 333). Delta requested Ware's services in hopes of being awarded the Project, a project from which Delta stands to make financial gains. Given these considerations, the Court finds that these facts satisfy the third and final part of the *Southern Machine* test.

The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record