UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

IVAN WARE & SON, INC.                                                                      PLAINTIFF

v.                                                                   CIVIL ACTION NO. 3:10-CV-00484-CRS

DELTA ALIRAQ, INC., et al.                                                                DEFENDANTS

## MEMORANDUM OPINION

This case derives from a failed business relationship between Plaintiff Ivan Ware & Son, Inc. ("Ware") and Defendants Delta Aliraq, Inc. ("Delta"), Kais Almarzouk, and others associated with Delta (collectively, the "Defendants"). The relationship revolved around the preparation of a contract bid for a boiler system installation project at the South Oil Refinery in Basrah, Iraq. Ware now moves for partial summary judgment on its fraud in the inducement, unjust enrichment, quantum meruit, promissory estoppel, and breach of fiduciary duty claims against Defendants. For the reasons stated below, the Court will deny Ware's motion.

## BACKGROUND

Prior to May 2007, the Iraqi Ministry of Oil (the "Ministry") requested proposals to supply three boilers for installation at the Iraqi government-owned South Oil Refinery near Basrah, Iraq. The Ministry sought a "turn key" project, which required the successful bidder to design and manufacture boiler components, produce spare parts, install the system, and provide engineering services and operational training. After the initial bid, the bid process mandated that the South Oil Refinery conduct a technical review of the project proposals. The South Oil Refinery would then contingently award the project contract. After this initial award, the

1

Ministry reviewed and determined whether to consent to and award the contract. The Ministry's award, however, was further conditioned on credit and bid bond requirements.

In preparation to submit a project bid, Delta solicited potential boiler manufacturers, including Ware, for proposals. Ware was the sole boiler provider to respond before the Ministry's deadline. Ware also sent Delta a letter of representation, which said that Delta, during a limited period of time, was authorized to represent Ware for the sale of new boiler equipment in Iraq. ECF No. 100-2. Delta submitted a proposal for the boiler project to the Ministry and South Oil Refinery in May 2007. Delta relied in part on Ware's proposal in creating the submission.

The South Oil Refinery rejected this proposal as missing key components, but allowed Delta to resubmit. Delta, working with Ware, resubmitted the proposal in August 2007. In November 2007, Delta submitted to the Ministry a required 3% of the purchase price bid bond. Ware also delivered to Delta a $1.5 million bid bond, although Delta contends it did not solicit this bid bond and that it was unable to use the bid bond in connection with the required submission.

The South Oil Refinery sought additional review of Ware as the company had not worked in Iraq previously. Ware provided additional information to Delta for submission to alleviate concerns. After this submission, Delta employees discovered Iraqi officials associated with the proposal review reacted negatively to Ware's participation as the boiler supplier. Delta never informed Ware of these concerns. In October 2007, Delta corresponded with the Ministry and South Oil Refinery. In the correspondence, Delta said that it would have the ability to select among approved suppliers – not just Ware – if it won the project.

On November 5, 2007, the South Oil Refinery awarded the project to Delta, conditioned upon additional bid guarantees and technical reviews. Delta notified Ware of the award on November 10, 2007, and informed Ware that Delta needed additional funds to satisfy the bid guarantee because Delta lacked capital to continue pursuing the project. Ware declined to provide the funds, but did propose a formal contract for the boiler components. Delta declined to enter into the formal contract, but said that Delta would choose Ware to provide the boilers. Delta secured funding for the guarantee requirements and notified Ware in December 2007, that Delta obtained two new investors and that future decisions would need their approval.

Delta and Ware continued to work on tasks related to the project proposal through February 2008. During this time, the Ministry continued to have doubts about Ware's involvement. In a letter dated April 3, 2008, Delta wrote to the Ministry that Ware would be included in the project and expressed support for Ware as the boiler supplier. ECF No. 101-10.

On May 25, 2008, the Ministry issued the final award and contract to Delta for the boiler project. However, in mid-June, the Deputy Minister of the Ministry modified the award terms. *See* Almarzouk Dep. 104 – 05, ECF No. 55-2. This modification included changing the payment terms, which would require Delta to provide additional financing, including a performance bond equal to 5% of the purchase price. Delta informed Ware it could not afford the performance bond. Although Ware sought financing, it was unable to secure financing for the performance bond. During this period, Ware submitted another formal equipment sales contract to Delta, as well as a non-binding letter of intent. Delta declined to enter into a formal agreement with Ware, but did execute the letter of intent.

Ware eventually informed Delta that Ware would not provide any financing for the performance bond. Delta then met with investor Dave Weisman to secure the additional funding. In exchange for providing the $1.6 million necessary to post the performance bond and access to $4 million of additional capital, Delta agreed to give Weisman 55% of the boiler project's profit, a return on the invested funds, and an appointment as Delta's Chief Executive Officer.

After assuming the role of CEO, Weisman requested and received new proposals for the boiler project from Ware and three other competitors. The parties dispute whether Ware was aware of the competitors' involvement in the new submission round. Ware submitted a revised technical proposal. Delta shared two pages of this proposal to a Ware competitor. Delta then entered into a contract with a Ware competitor to provide the project's boilers.

**STANDARD**

Before granting a motion for summary judgment, the Court must find that "there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence in a light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The non-moving party must show that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence ... of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**DISCUSSION**

1. Fraud in the Inducement

4

To establish a claim of fraudulent inducement under Kentucky law, a plaintiff must establish six elements:

a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury.

*United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999). In establishing these elements, the plaintiff carries a high burden, as claims alleging fraud must be proven by clear and convincing evidence. *Id.* Also, a plaintiff's reliance on a material representation "must be reasonable ... or, as the Restatement states, 'justifiable.'" *Flegles, Inc. v. Truserv Corp.*, 289 S.W.3d 544, 549 (Ky. 2009) (citation omitted).

Proof of fraud "may be developed by the character of the testimony, the coherency of the entire case as well as the documents, circumstances and facts presented." *Rickert*, 996 S.W.2d at 468. "Fraud may be established by evidence which is wholly circumstantial." *Id.* "In Kentucky, a claimant may establish detrimental reliance in a fraud action when he acts or fails to act due to fraudulent misrepresentations." *Rickert*, 996 S.W. at 469. "Where one party to a contract knows that the other relies on him to disclose all facts material to execution thereof … and one causing damage by concealment must assume the entire responsibility." *Faulkner Drilling Co., Inc. v. Gross*, 943 S.W.2d 634, 638 (Ky. Ct. App. 1997).

There is a genuine issue of material fact as to whether Delta knew its assurances were false or made these assurances recklessly, and also whether Ware reasonably relied on Delta's assurances.

First, Ware asserts that Delta's promises to award Ware the boiler project subcontract were false and that Delta knew they were false or made the statements recklessly. To support these accusations, Ware emphasizes the October 2007 letter from Delta to the South Oil Refinery. In that letter, Delta said that it had the ability to determine whether to use Ware or its competitors for the boiler project. The Iraqi Ministry of Oil also voiced concerns with Ware's inclusion on the boiler project. In private communication, however, Delta continued to assure Ware that Delta would award it the subcontract.

Viewing the evidence most favorably to Delta, these allegations are insufficient to prove Delta's requisite fraudulent intent. Indeed, even though Delta stated in the October 2007 letter it was free to choose among competitors, a letter from Delta to the Ministry in April 2008 says that Ware would be included in the boiler project. ECF No. 101-10. Delta does not include Ware's competitors in the April 2008 letter. To show the requisite intent, Ware must prove that Delta knew it did not intend to contract with Ware or recklessly reassured Ware that Delta intended to eventually enter into a contract for the boilers.

Viewing the facts and drawing reasonable inferences in Delta's favor, Delta may have intended to use Ware to provide the boilers until financial troubles required a new corporate stakeholder and CEO. Delta could have mentioned its ability to choose between competitors to appease officials to secure the contract and then, consistent with its assurances to Ware, chose Ware for the project. Prior to ultimately choosing a Delta competitor, Delta never informed the Ministry that Ware would definitely not be involved in the project. Instead, when confronting continued opposition to Ware's inclusion, Delta wrote the April 2008 letter supporting only Ware as the boiler provider.

Ware also argues that the parties signed a letter of intent. The facts suggest both parties intended this letter to be non-binding. Although Ware had requested a formalized agreement with Delta concerning project involvement, Delta consistently rejected these overtures. Although Delta eventually awarded the project to a Ware competitor, the letter of intent combined with the May letter to the Iraqi Ministry of Oil suggests that Delta intended to award a subcontract to Ware. However, Delta's inability to find sufficient funding – and Ware's inability to provide that funding – led Delta to enter into a relationship with Weisman that gave him input in selecting the boiler provider. Therefore, Ware has failed to prove Delta had the requisite intent in making statements or omissions to Ware concerning the boiler project. A genuine issue of material fact remains as to whether Delta knew or acted recklessly in making assurances to Ware.

Furthermore, assuming Ware relied on Delta's assurances, a genuine issue of material fact remains as to whether Ware *reasonably* relied on Delta's representations regarding the boiler project. While Delta did make numerous assurances that it would award a subcontract to Ware, Delta repeatedly declined to enter into a formal, binding contract, and Ware was aware that Delta desperately needed capital to continue with the project. *See* ECF No. 101-8. Moreover, Delta repeatedly asked for additional bids from Ware throughout the process. Also, there is a genuine issue of fact whether Ware knew in early 2009 that when it submitted a revised bid it was also competing with other potential boiler providers. A genuine issue of material fact remains as to whether Ware's reliance on Delta's statements and actions was reasonable.

The Court will deny Ware's motion for summary judgment on Ware's fraud in the inducement claim.

2. Unjust Enrichment

To state a claim for unjust enrichment under Kentucky law, a plaintiff must prove: "(1) [a] benefit [was] conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of [the] benefit by defendant; and (3) [an] inequitable retention of [the] benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009) (citing *Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371, 1380–81 (W.D. Ky. 1987)).

Ware argues that there is generally a right to unjust enrichment if the defendant defrauds plaintiff into acting on the defendant's behalf. However, the Court will deny Ware's motion for summary judgment on Ware's fraud claim. There is a genuine issue of material fact whether Ware's reliance was reasonable. Therefore, there is a genuine issue of material fact whether Delta's retention of any benefit was inequitable or unjust.

The Court will deny Ware's motion for summary judgment on its unjust enrichment claim.

3. Quantum Meruit

As an alternative to Ware's unjust enrichment claim, it also alleges a quantum meruit claim. To establish a claim for quantum meruit under Kentucky law, a plaintiff must show:

1. that valuable services were rendered, or materials furnished;

2. to the person from whom recovery is sought;

3. which services were accepted by that person, or at least were received by that person, or were rendered with the knowledge and consent of that person; and

4. under such circumstances as reasonably notified the person that the plaintiff expected to be paid by that person.

8

*Quadrille Bus. Sys. v. Kentucky Cattlemen's Ass'n, Inc.*, 242 S.W.3d 359, 366 (Ky. Ct. App. 2007) (quoting 66 Am.Jur.2d Restitution and Implied Contracts § 38 (2001)). Similar to the reasons stated above, there is a genuine issue of material fact as to whether Ware's reliance was reasonable. Therefore, there is a genuine issue of material fact whether Ware, under the circumstances, reasonably notified Delta that Ware expected to be paid for its involvement in the bid process.

The Court will deny Ware's motion for summary judgment on its quantum meruit claim.

4. Promissory Estoppel

A party may invoke promissory estoppel when it "reasonably relies on a statement of another and materially changes [its] position in reliance on the statement." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 642–43 (Ky. Ct. App. 2003). To state a claim for promissory estoppel under Kentucky law, a plaintiff must show:

> (1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise.

*C.A.F. & Associates, LLC v. Portage, Inc.*, 913 F.Supp.2d 333, 350–51 (W.D. Ky. 2012) (quoting *Res–Care, Inc. v. Omega Healthcare Investors, Inc.*, 187 F.Supp.2d 714, 718 (W.D. Ky. 2001)) (internal quotation omitted). The plaintiff must have justifiably relied on the promise. *See Harris v. Burger King Corp.*, 993 F. Supp. 2d 677, 691 (W.D. Ky. 2014) (citations omitted).

Similar to the reasons stated above, there is a genuine issue of material fact as to whether Ware's reliance was reasonable. Therefore, there is a genuine issue of material fact as to whether Ware justifiably relied on Delta's promises and actions. *See Harris*, 993 F. Supp. 2d at 691.

The Court will deny Ware's motion for summary judgment on its promissory estoppel claim.

5. <u>Breach of Fiduciary Duty</u>

To state a claim for breach of fiduciary duty under Kentucky law, plaintiff must establish that the defendant owed a fiduciary duty, breached that duty, and that the breach caused damages. *See Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189, 193 (Ky. 2013). The Sixth Circuit has stated that to show a fiduciary relationship existed,

> the party claiming the fiduciary relationship must first show the relationship existed before the transaction that is the subject of the action…. Second, the party claiming a fiduciary relationship must show that reliance was not merely subjective…. Third, the party claiming a fiduciary relationship must show that the nature of the relationship imposed a duty upon the fiduciary to act in the principal's interest, even if such action were to the detriment of the fiduciary.

*In re Sallee*, 286 F.3d 878, 892 (6th Cir. 2002) (citations omitted); *see also Crestwood Farm Bloodstock v. Everest Stables, Inc.*, 751 F.3d 434, 442 – 443 (6th Cir. 2014).

The Court finds there is genuine issue of material fact as to whether there is a fiduciary relationship between the parties. Ware argues that the letter of representation and its entrustment of confidential and technical information to Delta formed a fiduciary relationship. This is insufficient. The letter of representation, written by Ware, states that the letter "does not convey that a relationship other than that of an independent contractor exists between the two companies." ECF No. 100-2. It is also unclear whether the letter of representation was in effect during the majority of the relevant period as the letter states that it is "valid for a period of 6 months from [May 9, 2007] prior to the contract and it will be extended through the life of the '[boiler] program if a purchaser order/LC is placed with Ware." *Id.* Delta never placed a

purchase order or entered into a formal contract with Ware. Hence, the letter of representation likely expired on November 11, 2007.

Ware's additional argument that its entrustment of confidential technical information to Ware created a fiduciary relationship is likewise insufficient. Ware provided this information in hopes of securing the boiler subcontract, and providing confidential information does not automatically trigger a fiduciary relationship.

The Court will deny Ware's motion for summary judgment on Ware's fiduciary duty claim.

## CONCLUSION

The Court will deny Ware's motion for summary judgment.

The Court will enter a separate order in accordance with this opinion.

March 7, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**